*Attorney Grievance Commission of Maryland v. Lawrence Daniel O'Neill*, Misc. Docket AG No. 41, September Term, 2020. Opinion by Hotten, J.

**ATTORNEY DISCIPLINE – SANCTIONS – DISBARMENT**

The Court of Appeals disbarred Lawrence Daniel O'Neill ("Respondent") from the practice of law in Maryland. This Court found that Respondent violated Maryland Attorneys' Rules of Professional Conduct ("MARPC") 19-301.1 (Competence), 19-301.15 (Safekeeping Property), 19-308.1 (Bar Admission and Disciplinary Matters), 19-308.4 (Misconduct), 19-407 (Attorney Trust Account Record-Keeping), 19-408 (Commingling of Funds), and 19-410 (Prohibited Transactions). These violations stemmed from the failure to properly maintain client funds in an attorney trust account and the misappropriation of client funds for personal use. Respondent caused a negative balance to occur in the attorney trust account on multiple occasions by withdrawing client funds to pay monthly expenses. Respondent also failed to maintain accurate records of the attorney trust account. Respondent made knowingly and intentionally false statements to Bar Counsel, failed to timely and completely answer requests for financial records from Bar Counsel, and failed to participate in proceedings before the hearing judge. In the aggregate, Respondent's conduct warranted disbarment.

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 41

September Term, 2020

_____

ATTORNEY GRIEVANCE
COMMISSION OF MARYLAND

v.

LAWRENCE DANIEL O'NEILL

_____

Getty, C.J.,
*McDonald,
Watts,
Hotten,
Booth,
Biran,
Gould,

JJ.

_____

Opinion by Hotten, J.

_____

Filed: March 9, 2022

*McDonald, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to Maryland Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

Attorneys have professional obligations to place client funds in a trust account until earned, to avoid commingling client, operational, and personal funds, and to maintain accurate financial records. These obligations protect client funds from an attorney's creditors, "provide peace of mind and order to disputing parties," and generally "reinforce[] the public's confidence in our legal system." *Attorney Grievance Comm'n v. Calhoun*, 391 Md. 532, 574, 894 A.2d 518, 543 (2006) (citations omitted). "Establishing and maintaining an attorney trust account requires devoting time and attention to minute details[,]" which can "be dull and monotonous[,] . . . but is fundamental to complying with the Maryland Attorneys' Rules of Professional Conduct [("MARPC")]." *Attorney Grievance Comm'n v. Johnson*, 472 Md. 491, 502, 247 A.3d 767, 774 (2021).

The fundamental obligation to safeguard client funds applies regardless of where or how an attorney practices law. In the case at bar, Lawrence Daniel O'Neill ("Respondent") maintained a law office in New York City, but was licensed to practice law in Maryland.[1] Respondent repeatedly generated a negative balance on his attorney trust account by withdrawing client funds for personal use, commingled client and personal funds, and failed to maintain accurate accounting records. The Attorney Grievance Commission of Maryland, acting through Bar Counsel ("Petitioner"), filed a Petition for Disciplinary or Remedial Action ("the Petition") with this Court pursuant to Md. Rule 19-721.[2]

---

[1] Respondent was admitted to the Maryland Bar on December 19, 1975.

[2] Maryland Rule 19-721(a)(1) provides, in pertinent part: "Upon approval or direction of the Commission, Bar Counsel, on behalf of the Commission, shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals."

By order dated October 21, 2020, this Court designated the Honorable Elizabeth S. Morris ("hearing judge") of the Circuit Court for Anne Arundel County to consider the matter against Respondent and render findings of fact and conclusions of law. Following a hearing on July 26, 2021, and upon consideration of the evidence presented, the hearing judge found, by clear and convincing evidence, that Respondent violated each rule of professional conduct as alleged by Petitioner: MARPC 19-301.1 (Competence), 19-301.15 (Safekeeping Property), 19-308.1 (Bar Admission and Disciplinary Matters), 19-308.4 (Misconduct), 19-407 (Attorney Trust Account Record-Keeping), 19-408 (Commingling of Funds), and 19-410 (Prohibited Transactions).

We agree with the conclusions reached by the hearing judge and, for the following reasons, we disbar Respondent from the practice of law in Maryland.

## FINDINGS OF FACT

We summarize the hearing judge's findings of fact and the exhibits submitted at the hearing. At all times relevant hereto, Respondent maintained an office for the practice of law in New York City, but was not licensed to practice law in New York. Respondent provided consulting services to international corporations regarding corporate affairs, tax issues, mergers, and acquisitions. The failure to abide by attorney accounting practices in New York eventually triggered Petitioner's investigation of Respondent.

### Procedural History

Following several failed service attempts, Respondent was served on March 26, 2021 with the Petition, Writ of Summons issued by the circuit court, Order of the Court of Appeals dated October 21, 2020, Petitioner's First Request for Admissions of Fact and

2

Genuineness of Documents, Petitioner's First Set of Interrogatories, and Petitioner's First Request for Production of Documents.

Respondent filed a Motion to Dismiss with the erroneous expectation that it stayed the time to answer the Petition. Maryland Rule 19-725(c) prohibits a motion to dismiss during attorney grievance proceedings.[3] Respondent failed to file an answer in compliance with Md. Rule 19-724(a).[4] The hearing judge treated the failure to timely file an answer as a default pursuant to Md. Rule 19-724. Petitioner filed a Motion for Order of Default

---

[3] Maryland Rule 19-725(c) provides in pertinent part:

Motions to dismiss the proceeding and motions for summary judgment are not permitted.

**Committee note:** Proceedings on a Petition . . . are conducted pursuant to the original jurisdiction of the Court of Appeals to regulate the practice of law . . . . Moreover, because the authority of the circuit court judge designated by the Court of Appeals pursuant to [Md.] Rule 19-722 is limited to taking evidence and making findings of fact and proposed conclusions of law, that judge is not empowered to dismiss a petition. . . . [O]nly the Court of Appeals has authority to dismiss all or part of a petition.

[4] Maryland Rule 19-724 provides in pertinent part:

**(a) Timing.** The attorney shall file with the designated clerk and serve on Bar Counsel an answer to the petition:

(1) within 15 days after service; or

(2) by such other time specified by the Court of Appeals.

\*\*\*

**(c) Failure to Answer.** If the time for filing an answer has expired and the attorney has failed to file an answer in accordance with section (a) of this Rule, the court shall treat the failure as a default, and the provisions of [Md.] Rule 2-613 shall apply.

3

on April 29, 2021, and Respondent filed an opposition on May 3, 2021. The hearing judge issued an Order of Default against Respondent, and the clerk of the circuit court provided notice of the Order of Default to Respondent on June 24, 2021.

On July 20, 2021, Respondent moved to vacate the Order of Default, but failed to state a legal or factual basis as required by Md. Rule 2-613(d).[5] On July 25, 2021, Respondent filed a Motion for Continuance stating he was "currently out of the country attending to a family emergency and [was] unable to return to Maryland until the first week of August." Respondent simultaneously filed a response to Petitioner's Proposed Findings of Fact and Conclusions of Law, but the hearing judge did not consider the response due to the Order of Default.

Respondent neither appeared nor participated during the hearing on July 26, 2021. Petitioner appeared and presented evidence. Pursuant to Md. Rule 2-424(b),[6] Petitioner's

_____

[5] Maryland Rule 2-613(d) provides: "The defendant may move to vacate the order of default within 30 days after its entry. The motion shall state the reasons for the failure to plead and the legal and factual basis for the defense to the claim."

[6] Maryland Rule 2-424 provides in pertinent part:

**(b) Response.** Each matter of which an admission is requested shall be deemed admitted unless, within 30 days after service of the request or within 15 days after the date on which that party's initial pleading or motion is required, whichever is later, the party to whom the request is directed serves a response signed by the party or the party's attorney.

\*\*\*

**(d) Effect of Admission.** Any matter admitted under this Rule is conclusively established unless the court on motion permits withdrawal or amendment. The court may permit withdrawal or amendment if the court finds that it would assist the presentation of the merits of the action and the party who obtained the admission fails to satisfy the court that withdrawal or

(continued . . .)

4

Request for Admissions were deemed admitted and received into evidence. The hearing judge denied Respondent's motion to vacate the Order of Default on August 3, 2021.

The hearing judge found the following facts to have been established by clear and convincing evidence.

**Overdrafts on Attorney Trust Account**

Respondent maintained an attorney trust account at JPMorgan Chase Bank ("Chase Bank") at all times relevant hereto. On July 12, 2018, Respondent deposited a $1,000 check into the attorney trust account. The check was drawn from his personal checking account and made payable to "cash." On July 13, 2018, the deposit was denied for insufficient funds leaving $1.96 in the attorney trust account. That same day, Respondent made an electronic payment of $300 from his attorney trust account to pay personal expenses. This transfer caused an overdraft of -$300 from the attorney trust account.[7]

The hearing judge found that Respondent repeated this process and subsequently caused additional overdrafts on his attorney trust account on numerous occasions. On July 18, 2018, Respondent deposited a check in the amount of $900 dollars into his attorney trust account from his personal account, which was returned the next day for insufficient funds causing an overdraft of -$198.04 from the attorney trust account. On July 19, 2018,

_____

(. . . continued)

    amendment will prejudice the party in maintaining the action or defense on the merits. . . .

    [7] The hearing judge did not explain why the overdraft was for -$300, instead of -$298.04 (*i.e.*, the difference between $1.96 and -$300).

5

Respondent made two electronic transfers from the attorney trust account to his operating account in the amounts of $200 and $150, which caused an overdraft of $-548.04.

On September 4, 2018, Respondent deposited a check in the amount of $900 into his attorney trust account from his personal account. The check was returned for insufficient funds on September 5, 2018. That same day, Respondent made two electronic transfers from his attorney trust account to his operating account and Chase credit card totaling $1,000, which caused an overdraft of -$195.30.

On September 25, 2018, Respondent deposited a check in the amount of $800 into his attorney trust account, drawn from his personal account. On September 26, 2018, the check was returned for insufficient funds, and Respondent made two transfers from his attorney trust account causing an overdraft in the amount of -$199.77.

In total, the hearing judge found that Respondent's attorney trust account had a negative balance on ten different occasions between July 1, 2018 and September 30, 2019.

### Commingling and Prohibited Transactions

During this same time period, Respondent deposited personal funds into his attorney trust account on seventeen different occasions. Respondent also paid personal and business expenses from his attorney trust account. Respondent directed Chase Bank to automatically debit funds from his attorney trust account to pay monthly personal credit card bills.

### Bar Counsel Investigation

On July 25, 2018, Chase Bank notified the Lawyers' Fund for Client Protection of the State of New York ("NY Client Protection Fund") of Respondent's overdraft arising

6

on July 13, 2018.[8]  The NY Client Protection Fund informed the Attorney Grievance Committee of the State of New York ("NY AGC") of each overdraft notice that it received from Chase Bank pursuant to N.Y. Ct. R. § 1300.1.[9]  On October 15, 2018, the NY AGC wrote to the NY Client Protection Fund explaining that because Respondent had an office located in neither Manhattan nor the Bronx,[10] nor was a member of the New York bar, the matter did not come within its jurisdiction.  The NY AGC advised the NY Client Protection Fund that it was forwarding its correspondence to Petitioner.

Bar Counsel received the first overdraft notice from the NY AGC on October 22, 2018.[11]  Approximately a month later, Bar Counsel wrote to Respondent to the business address on file with the Client Protection Fund of the Bar of Maryland, enclosing the

---

[8] Chase Bank sent additional notifications of Respondent's subsequent overdrafts to the NY Client Protection Fund on July 27, September 3, and September 28.

[9] New York Court Rules § 1300.1 provides in pertinent part:

(b) An agreement to provide dishonored check and overdraft reports shall be filed with the [NY Client Protection Fund], which shall maintain a central registry of all banking institutions which have been approved in accordance with this section, and the current status of each such agreement.  The agreement shall apply to all branches of each banking institution that provides special bank accounts for attorneys engaged in the practice of law in this State, and shall not be cancelled by a banking institution except on 30 days' prior written notice to the [NY Client Protection Fund].

[10] Respondent maintained an office in Manhattan, but the hearing judge did not explain why the NY AGC indicated otherwise.  The NY AGC presumably declined to investigate because Respondent did not practice New York law at the Manhattan office.

[11] The NY AGC forwarded to Bar Counsel the September 7, 2018 overdraft notification on December 20, 2018, and the September 28, 2018 overdraft notification on January 14, 2019.  Bar Counsel enclosed these overdraft notifications in its correspondence with Respondent.

overdraft notices and requested a written response including "copies of client ledgers, deposit slips, canceled checks . . . and monthly bank statements for the period of June 2018 through August 2018." On December 12, 2018, the letter was returned "not deliverable as addressed" and "unable to forward." Bar Counsel sent a second letter to the address associated with Respondent's attorney trust account, but it was returned as "not deliverable as addressed" and "unable to forward." On January 3, 2019, Bar Counsel wrote to Respondent at his home address on file with the Client Protection Fund of the Bar of Maryland, enclosed the overdraft notices, and requested a written response within ten days, including "copies of client ledgers, deposit slips, cancelled checks . . . and monthly bank statements from October 2018 through January 2019."

On January 17, 2019, Respondent wrote to Bar Counsel and stated that the overdrafts occurred when "several checks presented by clients in payment of fees were, returned unpaid, yet funds were withdrawn to pay expenses." Respondent requested additional time to submit the financial records. The hearing judge found Respondent's explanation for the overdrafts knowingly false, because the overdrafts occurred when checks from Respondent's personal bank account were deposited into the attorney trust account and returned for insufficient funds.

By April 24, 2019, Bar Counsel had yet to receive the requested records. Bar Counsel Investigator Charles E. Miller, IV, wrote to Respondent, enclosing previous correspondence, and again requested the financial records. On July 31, 2019, Bar Counsel had not received a response and notified Respondent that the matter had been docketed for further investigation and requested a written explanation for each overdraft on the attorney

8

trust account by August 12, 2019.  Bar Counsel also requested all financial record-keeping documents for his attorney trust account between July 1, 2018 and July 1, 2019, "including all monthly statements, deposit and disbursement records, cancelled checks (front and back), and any client matter records that were maintained."

On September 4, 2019, Respondent wrote to Bar Counsel, including a spreadsheet purporting to be an "accounting for the IOLTA account[]" from January 2018 through July 2018.  Respondent provided no other records for the requested time period and again "falsely stated that '. . . all overdrafts relate to checks from clients that were returned unpaid.'"  On October 8, 2019, Respondent emailed Bar Counsel with attached monthly bank statements for his attorney trust account for July 1, 2018 through July 1, 2019.  No other requested financial records were submitted.

On October 11, 2019, pursuant to a subpoena, Bar Counsel obtained records from Chase Bank for Respondent's attorney trust account from July 1, 2018 through September 30, 2019.  Contrary to Respondent's written statements to Bar Counsel, the records demonstrated that the overdrafts resulted from Respondent's personal checks being returned for insufficient funds.

Bar Counsel took Respondent's statement under oath on January 27, 2020.  The hearing judge found that Respondent falsely testified that he maintained client ledgers in conformance with the Maryland Rules.  Respondent also admitted under oath that (1) he deposited personal funds into the attorney trust account, (2) he paid personal expenses from his attorney trust account, and (3) he deposited personal funds into the attorney trust

account because he either improperly removed client funds or attempted to avoid an overdraft.

For at least one client, Peter Varty, Respondent admitted that he deposited client funds into his personal checking account on six occasions before allegedly attempting to transfer the funds into the attorney trust account. Respondent contended that he received Mr. Varty's permission to deposit the funds into a personal account, but the hearing judge found no evidence of Mr. Varty's written, informed consent. When Respondent allegedly attempted to deposit the funds into a trust account, the bank dishonored the checks, which the hearing judge found as additional evidence of the misappropriation of Mr. Varty's funds. The hearing judge found that Respondent knowingly and intentionally failed to deposit and safekeep Mr. Varty's funds in an attorney trust account, and Respondent knowingly and intentionally deposited personal funds into his attorney trust account to pay business or personal expenses.[12]

---

[12] On September 16, 2021, after failing to meaningfully participate in the disciplinary proceedings, Respondent filed a "Response to Petitioner's Recommendation for Sanction" (capital letters removed) that asserted at least two of the hearing judge's findings of fact were clearly erroneous. First, "[t]here was never any intermingling of client funds in the trust account as at no time during the period under investigation were there client funds in that account." Second, Respondent claimed that the "charge of misappropriation of funds from Mr. Varty is impossible." Respondent claimed that he represented Mr. Varty *pro bono* in a matter in the Federal District Court for the Southern District of Florida. Respondent secured a settlement of $5,000, and according to Respondent, these funds were used to cover, in part, litigation expenses. Respondent attached an affidavit from Mr. Varty authorizing a payment of $5,000 to Respondent to offset out of pocket expenses incurred during his case. Respondent attempted to submit the affidavit to this Court. This evidence was not presented to the hearing judge. Accordingly, we decline to consider facts and evidence that are outside the record.

10

While under oath, Respondent stated that the discrepancies between his "IOLTA accounting spreadsheet" and the Chase Bank records subpoenaed by Bar Counsel were "errors." The hearing judge found that the nineteen discrepancies were not merely "errors[]" but intentional misrepresentations to conceal his misconduct.

Following the statement under oath, Respondent agreed to provide additional documentation of specific client matters and transactions. Respondent failed to provide the requested documentation. Bar Counsel requested the materials to be submitted by April 17, 2020. Respondent missed the deadline and requested an extension. On April 24, 2020, Respondent emailed Bar Counsel claiming that the requested documents would be contained in a "dropbox[.]"[13] Respondent never shared the documents nor created a "dropbox[.]" The hearing judge found that Respondent intentionally failed to send any requested documents to Bar Counsel.

On April 27, 2020, Bar Counsel requested the materials via email, and Respondent promised he would provide the materials electronically, but again failed to do so. On May 1, 2020, Respondent emailed Bar Counsel that a computer malfunction prevented transmission of the files:

> Unfortunately on Monday evening my computer crashed. Looks like the motherboard gave up the ghost. All the file[s] as are backed up on the cloud. As the [A]pple [S]tore is closed[,] I have sent it away to be repaired and have been told that I will have it Monday. I have arranged to borrow a friend[']s spare computer which I will pick up tomorrow so one way or the other you

_____

[13] "Dropbox" is a "cloud-based document sharing service that permits users to share documents with other users without the need . . . to maintain a local file-sharing server." Timothy S. Faith, *Virtuality – The Lawyer That Is Almost Really There*, 47 Md. B.J. 12, 18 (Dec. 2014).

will have the Dropbox on Monday. Tried to use my iPad as a[n] alternative but it just does not work or at least I can't figure it out.

The hearing judge found that Respondent's statements were knowingly false, and that Respondent did not maintain accurate records for the receipt, maintenance, and disbursement of client funds, or the funds of the client held in trust. The hearing judge further found that Respondent did not perform monthly reconciliations of his attorney trust account records, nor did Respondent provide the documents as requested several times by Bar Counsel.

## THE HEARING JUDGE'S CONCLUSIONS OF LAW

The hearing judge found by clear and convincing evidence that Respondent violated MARPC 19-301.1 (Competence), 19-301.15 (Safekeeping Property), 19-308.1 (Bar Admission and Disciplinary Matters), 19-308.4 (Misconduct), 19-407 (Attorney Trust Account Record-Keeping), 19-408 (Commingling of Funds), and 19-410 (Prohibited Transactions).

## MARPC 19-301.1 (Competence)

MARPC 19-301.1 provides: "An attorney shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." A lawyer violates MARPC 19-301.1 by "failing to maintain funds in an attorney trust account without a client's consent to some other arrangement." *Attorney Grievance Comm'n of Maryland v. Haley*, 443 Md. 657, 668, 118 A.3d 816, 822 (2015) (citation, quotation, and other markings omitted).

12

The hearing judge concluded that Respondent violated MARPC 19-301.1 by failing to deposit client funds into an attorney trust account. Respondent admitted that he deposited Mr. Varty's funds into his personal account without consent. The hearing judge rejected Respondent's claim that he received Mr. Varty's permission to deposit the funds in his personal account. The hearing judge also rejected Respondent's "unsubstantiated claim" that his personal checks were dishonored because Mr. Varty's payments were returned for insufficient funds.

## MARPC 19-301.15 (Safekeeping Property)

MARPC 19-301.15 provides in relevant part:

**(a)** An attorney shall hold property of clients or third persons that is in an attorney's possession in connection with a representation separate from the attorney's own property. Funds shall be kept in a separate account maintained pursuant to Title 19, Chapter 400 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. . . . Complete records of the account funds and of other property shall be kept by the attorney and shall be preserved for a period of at least five years after the date the record was created.

**(b)** An attorney may deposit the attorney's own funds in a client trust account only as permitted by [Md.] Rule 19-408 (b).

**(c)** Unless the client gives informed consent, confirmed in writing, to a different arrangement, an attorney shall deposit legal fees and expenses that have been paid in advance into a client trust account and may withdraw those funds for the attorney's own benefit only as fees are earned or expenses incurred.

The hearing judge concluded that Respondent violated MARPC 19-301.15(a), (b), and (c). Respondent failed to deposit and maintain client funds in his attorney trust account and failed to create and maintain appropriate financial records in violation of MARPC 19-301.15(a). The hearing judge also found that Respondent violated MARPC 19-301.15(b)

13

by routinely commingling personal funds with client funds. Finally, Respondent withdrew client funds from the attorney trust account without the informed, written consent by the client in violation of MARPC 19-301.15(c).

## MARPC 19-308.1 (Bar Admission and Disciplinary Matters)

MARPC 19-308.1 provides:

An applicant for admission or reinstatement to the bar, or an attorney in connection with a bar admission application or in connection with a disciplinary matter, shall not:

**(a)** knowingly make a false statement of material fact; or

**(b)** fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by [MARPC] 19-301.6 (1.6).

An attorney violates MARPC 19-308.1(a) when they have "knowingly misrepresented material facts in response to Bar Counsel's requests for information." *Attorney Grievance Comm'n v. Yi*, 470 Md. 464, 497, 235 A.3d 963, 982 (2020). A violation of MARPC 19-308.1(b) occurs when an attorney fails to timely respond to lawful requests for information from Bar Counsel. *Attorney Grievance Comm'n v. Butler*, 441 Md. 352, 359, 107 A.3d 1220, 1224 (2015).

The hearing judge concluded that Respondent violated MARPC 19-308.1(a) and (b). Respondent violated MARPC 19-308.1(a) by falsely stating in his January 17 and September 4, 2019 responses to Bar Counsel that the overdrafts on his attorney trust account resulted from "clients' checks that were returned unpaid[,]" when the overdrafts arose from Respondent's personal transactions. Respondent further violated the rule by

14

intentionally misrepresenting transactions on his "IOLTA accounting spreadsheet[.]" Respondent violated MARPC 19-308.1(b) by failing to provide the documentation requested by Bar Counsel on November 28, 2018, and January 3, April 24, and July 31, 2019. Respondent additionally violated the rule by knowingly failing to provide information and documentation requested by Bar Counsel during the statement under oath and in a letter from Bar Counsel dated April 3, 2020.

## MARPC 19-308.4 (Misconduct)

MARPC 19-308.4 provides in relevant part:

It is professional misconduct for an attorney to:

(a) violate or attempt to violate the [MARPC], knowingly assist or induce another to do so, or do so through the acts of another;

\*\*\*

(c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation; [or]

(d) engage in conduct that is prejudicial to the administration of justice[.]

The hearing judge concluded that Respondent violated MARPC 19-308.4(a) because he violated several other rules of professional conduct. *Attorney Grievance Comm'n v. Framm*, 449 Md. 620, 664, 144 A.3d 827, 853 (2016) ("We have held that, when an attorney violates a rule of professional conduct, the attorney also violates [MARPC 19-30]8.4(a).[14]") (citation and internal quote omitted).

---

[14] Effective July 1, 2016, the Maryland Lawyers' Rules of Professional Conduct ("MLRPC") were renamed the Maryland Attorneys' Rules of Professional Conduct (*i.e.,* MARPC) and re-codified in Title 19 of the Maryland Rules, without substantive change.

15

The hearing judge concluded that Respondent violated MARPC 19-308.4(c) by failing to deposit Mr. Varty's funds in an attorney trust account and misappropriating the funds for his own use. *Attorney Grievance Comm'n v. Gisriel*, 409 Md. 331, 383, 974 A.2d 331, 361 (2009); *see also Attorney Grievance Comm'n v. McLaughlin*, 456 Md. 172, 200, 171 A.3d 1205, 1221 (2017) ("We have consistently found that attorneys violate [MARPC 19-308.4(c)] by making false statements to Bar Counsel.") (citation omitted). The hearing judge also concluded that Respondent violated MARPC 19-308.4(d) because his failure to respond to requests from Bar Counsel was prejudicial to the administration of justice. *Attorney Grievance Comm'n v. Brigerman*, 441 Md. 23, 40, 105 A.3d 467, 477 (2014) (concluding that an attorney violated MARPC 19-308.4(d) for "repeatedly fail[ing] to respond in a timely manner to Bar Counsel's inquiries[.]") (citation omitted).

### MARPC 19-407 (Attorney Trust Account Record-Keeping)

MARPC 19-407 provides in relevant part:

**(a) Creation of Records.** The following records shall be created and maintained for the receipt and disbursement of funds of clients or of third persons:

(1) *Attorney Trust Account Identification.* An identification of all attorney trust accounts maintained, including the name of the financial institution, account number, account name, date the account was opened, date the account was closed, and an agreement with the financial institution establishing each account and its interest-bearing nature.

(2) *Deposits and Disbursements.* A record for each account that chronologically shows all deposits and disbursements, as follows:

> (A) for each deposit, a record made at or near the time of the deposit that shows (i) the date of the deposit, (ii) the amount, (iii) the identity of the client or third person for whom the funds were deposited, and (iv) the purpose of the deposit;

16

(B) for each disbursement, including a disbursement made by electronic transfer, a record made at or near the time of disbursement that shows (i) the date of the disbursement, (ii) the amount, (iii) the payee, (iv) the identity of the client or third person for whom the disbursement was made (if not the payee), and (v) the purpose of the disbursement;

(C) for each disbursement made by electronic transfer, a written memorandum authorizing the transaction and identifying the attorney responsible for the transaction.

[Cross reference omitted.]

(3) *Client Matter Records.* A record for each client matter in which the attorney receives funds in trust, as follows:

(A) for each attorney trust account transaction, a record that shows (i) the date of the deposit or disbursement; (ii) the amount of the deposit or disbursement; (iii) the purpose for which the funds are intended; (iv) for a disbursement, the payee and the check number or other payment identification; and (v) the balance of funds remaining in the account in connection with the matter; and

(B) an identification of the person to whom the unused portion of a fee or expense deposit is to be returned whenever it is to be returned to a person other than the client.

(4) *Record of Funds of the Attorney.* A record that identifies the funds of the attorney held in each attorney trust account as permitted by [MARPC] 19-408 (b).

**(b) Monthly Reconciliation.** An attorney shall cause to be created a monthly reconciliation of all attorney trust account records, client matter records, records of funds of the attorney held in an attorney trust account as permitted by [MARPC] 19-408 (b), and the adjusted month-end financial institution statement balance. The adjusted month-end financial institution statement balance is computed by adding subsequent deposits to and subtracting subsequent disbursements from the financial institution's month-end statement balance.

17

The hearing judge concluded that Respondent violated MARPC 19-407(a) by failing to maintain accurate records for the deposit and disbursement of client funds. The "IOLTA accounting spreadsheet" failed to accurately record the client for whom deposits and/or disbursements were made and the purpose of the deposit and/or disbursement.

The hearing judge also concluded that Respondent violated MARPC 19-407(b) by failing to create monthly reconciliations of all attorney trust account records.

## MARPC 19-410 (Prohibited Transactions)

MARPC 19-410 provides in relevant part:

**(a) Generally.** An attorney or law firm may not borrow or pledge any funds required by the Rules in this Chapter to be deposited in an attorney trust account, obtain any remuneration from the financial institution for depositing any funds in the account, or use any funds for any unauthorized purpose.

\*\*\*

**(c) Negative Balance Prohibited.** No funds from an attorney trust account shall be disbursed if the disbursement would create a negative balance with regard to an individual client matter or all client matters in the aggregate.

The hearing judge concluded that Respondent violated MARPC 19-410(a) by misappropriating Mr. Varty's funds for personal use. *See Attorney Grievance Comm'n v. Frank*, 470 Md. 699, 739, 236 A.3d 603, 628 (2020) (noting the use of attorney trust funds "for any unauthorized purposes[]" violates MARPC 19-410(a)).

The hearing judge further concluded that Respondent violated MARPC 19-410(c) by disbursing funds from the attorney trust account that created a negative balance on ten different days.

18

**Aggravating and Mitigating Factors**

During an attorney grievance matter, the circuit court may consider the existence of aggravating and mitigating factors. In *Attorney Grievance Commission v. Shuler*, 443 Md. 494, 117 A.3d 38 (2015), we articulated the following aggravating factors that should be considered in an attorney disciplinary proceeding:

> (1) prior attorney discipline; (2) a dishonest or selfish motive; (3) a pattern of misconduct; (4) multiple violations of the M[A]RPC; (5) bad faith obstruction of the attorney discipline proceeding by intentionally failing to comply with the Maryland Rules or orders of this Court []; (6) submission of false evidence, false statements, or other deceptive practices during the attorney discipline proceeding; (7) a refusal to acknowledge the misconduct's wrongful nature; (8) the victim's vulnerability; (9) substantial experience in the practice of law; (10) indifference to making restitution or rectifying the misconduct's consequences; (11) illegal conduct, including that involving the use of controlled substances; and (12) likelihood of repetition of the misconduct.

*Id.* at 506–07, 117 A.3d at 46 (alterations in original omitted). Petitioner has the burden of proving aggravating factors by clear and convincing evidence. Md. Rule 19-727(c).

Petitioner alleged the existence of the following aggravating factors, as articulated and numbered by this Court in *Shuler*: (2) a dishonest or selfish motive; (3) a pattern of misconduct; (4) multiple violations; (5) bad faith obstruction of the disciplinary proceeding; (7) a refusal to acknowledge wrongful conduct; and (9) substantial experience in the practice of law.

The hearing judge found clear and convincing evidence to establish each of the alleged aggravating factors. Respondent exhibited a dishonest and selfish motive by "intentionally misappropriat[ing] client funds and fail[ing] to safekeep funds . . . in his trust account." There was a pattern of misconduct and multiple offenses evidenced by

19

Respondent's repeated misappropriation of funds and consistent failure to abide by the rules governing attorney trust accounts. The hearing judge found bad faith obstruction of disciplinary proceedings due to the intentional failure to comply with Bar Counsel's requests for information. The hearing judge noted a failure to acknowledge the wrongful nature of misconduct and a failure to "meaningfully participate in . . . proceedings."

This Court "always consider[s]" mitigating factors "in deciding a disposition in an Attorney Grievance case." *Attorney Grievance Comm'n v. Coppola*, 419 Md. 370, 401, 19 A.3d 431, 449 (2011). In *Attorney Grievance Commission v. Hodes*, this Court provided a list of possible mitigating factors:

> absence of a prior disciplinary record; absence of a dishonest or selfish motive; personal or emotional problems; timely good faith efforts to make restitution or to rectify consequences of misconduct; full and free disclosure to disciplinary board or cooperative attitude toward proceedings; inexperience in the practice of law; character or reputation; physical or mental disability or impairment; delay in disciplinary proceedings; interim rehabilitation; imposition of other penalties or sanctions; remorse; and finally, remoteness of prior offenses.

441 Md. 136, 209, 105 A.3d 533, 576 (2014) (citation omitted). Respondent has the burden of proving mitigating factors by a preponderance of evidence. Md. Rule 19-727(c).

The hearing judge found that Respondent failed to demonstrate any mitigating factors by failing to participate in the hearing.

## STANDARD OF REVIEW

In attorney discipline proceedings, "this Court has original and complete jurisdiction and conducts an independent review of the record." *Attorney Grievance Comm'n v. Whitehead*, 405 Md. 240, 253, 950 A.2d 798, 806 (2008). "In our review of the record, the

20

hearing judge's findings of fact generally will be accepted unless they are clearly erroneous." *Id.*, 950 A.2d at 806 (citations and footnote omitted). Because Respondent filed an exception, Md. Rule 19-740(b)(2)(B) provides:

> [This Court] shall determine whether the findings of fact have been proved by the requisite standard of proof set out in [Md.] Rule 19-727(c). Th[is] Court may confine its review to the findings of fact challenged by the exceptions. Th[is] Court shall give due regard to the opportunity of the hearing judge to assess the credibility of witnesses.

This Court shall not disturb the hearing judge's findings "where 'there is any competent evidence to support the' finding of fact." *Attorney Grievance Comm'n v. Smith-Scott*, 469 Md. 281, 332–33, 230 A.3d 30, 60 (2020) (quoting *Attorney Grievance Comm'n v. Donnelly*, 458 Md. 237, 276, 182 A.3d 743[, 766] (2018)).

We assess the hearing judge's legal conclusions under a *de novo* standard of review. *Attorney Grievance Comm'n v. Moody*, 457 Md. 90, 110, 175 A.3d 811, 823 (2017); Md. Rule 19-740(b)(1) ("[This Court] shall review [*de novo*] the circuit court judge's conclusions of law."). "If the hearing judge's factual findings are not clearly erroneous and the conclusions drawn from them are supported by the facts found, exceptions to conclusions of law will be overruled." *Attorney Grievance Comm'n v. Tanko*, 408 Md. 404, 419, 969 A.2d 1010, 1019 (2009). We have "the ultimate authority to decide whether a lawyer has violated the professional rules." *Attorney Grievance Comm'n v. Harrington*, 367 Md. 36, 49, 785 A.2d 1260, 1267 (2001) (internal citations and quotation marks omitted).

21

## DISCUSSION

## Exceptions

Maryland Rule 19-728(b) provides in pertinent part that "each party may file (1) exceptions to the findings and conclusions of the hearing judge, (2) recommendations concerning the appropriate disposition under [Md.] Rule 19-740 (c), and (3) a statement of costs to which the party may be entitled under [Md.] Rule 19-709."

Petitioner filed no exceptions. Respondent submitted an exception "to the referral of the . . . matter from the District Court[15] of Ann[e] Arundel County." Respondent excepted to the hearing judge's refusal to waive his default and to postpone the hearing as a result of a family medical emergency. Respondent contended that the factual record is "incomplete, one-sided[,] and . . . relies on conjecture and unverified assumptions." According to Respondent, "[m]any of the statements and conclusions in the report of the District Court are in error and easily refuted[,]" and "is highly prejudicial and denies Respondent due process." Respondent requested that this Court "[r]emand this action back to the District Court to permit Respondent to adequately respond to the charges against him."

We overrule Respondent's exceptions. "A hearing judge is given 'a great deal of discretion in determining which evidence to rely upon.'" *Johnson*, 472 Md. at 527, 247 A.3d at 789 (quoting *Attorney Grievance Comm'n v. Miller*, 467 Md. 176, 195, 223 A.3d 976[, 987] (2020)) (other citation omitted). "As far as what evidence a hearing judge must

---

[15] Respondent mistakenly referred to the circuit court as the "District Court[.]"

22

rely upon to reach his or her conclusions, we have said that the hearing judge 'may "pick and choose" what evidence to believe.'" *Attorney Grievance Comm'n v. Woolery*, 462 Md. 209, 230, 198 A.3d 835, 847 (2018) (quoting *Attorney Grievance Comm'n v. Page*, 430 Md. 602, 627, 62 A.3d 163, 178 (2013)).

Respondent did not appear and, therefore, failed to present testimony or other evidence at the disciplinary hearing. Pursuant to Md. Rule 2-424(b), Petitioner's Request for Admissions were deemed admitted and received into evidence. On this basis alone, "there is competent evidence in the record to support the hearing judge's findings of fact[.]" *Attorney Grievance Comm'n v. Dailey*, 474 Md. 679, 700, 255 A.3d 1068, 1080 (2021); *Attorney Grievance Comm'n v. Johnson*, 450 Md. 621, 640, 150 A.3d 338, 349 (2016); *Attorney Grievance Comm'n v. Steinberg*, 395 Md. 337, 351–52, 910 A.2d 429, 437–38 (2006). We reject Respondent's blanket contention that the findings of fact were erroneous.

The hearing judge did not deny Respondent due process or otherwise err by conducting the hearing in the absence of Respondent. "As we have said time and time again, the Maryland rules are 'precise rubrics,' which are to be strictly followed." *Gen. Motors Corp. v. Seay*, 388 Md. 341, 356, 879 A.2d 1049, 1057 (2005) (quoting *Robinson v. Bd. of Cty. Comm'rs*, 262 Md. 342, 346, 278 A.2d 71, 73 (1971)) (other citations omitted). Maryland Rule 19-727(d) provides: "Unless extended by the Court of Appeals, the hearing shall be completed within 120 days after service on the attorney of the order entered under [Md.] Rule 19-722." The hearing judge's discretion to postpone a hearing is generally limited by how close to the deadline the hearing is scheduled.

23

A hearing judge, within the confines of Md. Rule 19-727(d), "*may continue* or postpone a trial or other proceeding *as justice may require*." Md. Rule 2-508(a) (emphasis added). The determination of whether justice requires a continuance "lies within the sound discretion of the trial judge." *Touzeau v. Deffinbaugh*, 394 Md. 654, 669, 907 A.2d 807, 816 (2006). This Court has not disturbed the decision to deny a motion for continuance absent an abuse of discretion. *Id.*, 907 A.2d at 816. An abuse of discretion may occur when the continuance was mandated by law, *Mead v. Tydings*, 133 Md. 608, 612, 105 A. 863, 864 (1919), or when counsel was taken by surprise by an unforeseen event, but had either acted diligently to prepare for trial, *Plank v. Summers*, 205 Md. 598, 604–05, 109 A.2d 914, 916–17 (1954), or had acted diligently to mitigate the effects of the surprise. *Thanos v. Mitchell*, 220 Md. 389, 392–93, 152 A.2d 833, 834–35 (1959).

The hearing judge is not mandated by law to grant a continuance for a possible urgent matter. Respondent demonstrated no diligence in preparation for the disciplinary proceedings, as evidenced by the Order of Default. We also see no indication in the record of diligent efforts to mitigate the effects of the surprise. Respondent filed the Motion for Continuance on July 25, 2021, one day before the hearing. Respondent stated that he was "currently out of the country attending to a family emergency and [was] unable to return to Maryland until the first week of August." Respondent provided no details regarding the nature and extent of the family emergency, when the need to travel out of the country first materialized, or a discernible postponement date for the hearing. We find no abuse of discretion by the hearing judge in denying the continuance and proceeding with the hearing despite the absence of Respondent.

24

We also find no credible basis for Respondent's two specific assertions of factual error by the hearing judge:[16] there was no commingling of client funds in the attorney trust account and the misappropriation of Mr. Varty's funds was impossible. First, the evidence submitted by Petitioner, pursuant to a subpoena of Chase Bank, demonstrated that Respondent routinely commingled client funds in the attorney trust account. Respondent's conclusory statement to the contrary does not persuade us that the finding was clearly erroneous. Second, the hearing judge found that Respondent misappropriated Mr. Varty's funds based on a statement Respondent admitted under oath. There is no evidence in the record to support Respondent's assertion that misappropriation of Mr. Varty's funds was impossible. We overrule Respondent's exceptions to the findings of the commingling of client funds and the misappropriation of Mr. Varty's funds.

## Conclusions of Law

Based on our independent review of the record, we affirm the hearing judge's legal conclusions that Respondent violated MARPC 19-301.1 (Competence), 19-301.15 (Safekeeping Property), 19-308.1 (Bar Admission and Disciplinary Matters), 19-308.4 (Misconduct), 19-407 (Attorney Trust Account Record-Keeping), 19-408 (Commingling of Funds), and 19-410 (Prohibited Transactions).

The failure to properly maintain an attorney trust account violates an attorney's professional obligation of competence pursuant to MARPC 19-301.1. In *Attorney*

---

[16] We only address Respondent's specific allegations of factual error. Md. Rule 19-740(b)(2)(B) ("The Court may confine its review to the findings of fact challenged by the exceptions.").

25

*Grievance Commission v. Smith*, this Court concluded that an attorney "demonstrates incompetence, and therefore violates [MARPC] 19-301.1, when he [or she] fails to properly maintain his [or her] client trust account." 457 Md. 159, 214, 177 A.3d 640, 673 (2018) (citing *Attorney Grievance Comm'n v. Bell*, 432 Md. 542, 552, 69 A.3d 1040, 1046 (2013)).

In the case at bar, Respondent on nineteen separate occasions either failed to properly deposit client funds in the attorney trust account or improperly transferred client funds to and from the attorney trust account. Each failure to properly maintain the attorney trust account amounts to a violation of MARPC 19-301.1.

In *Attorney Grievance Commission v. Frank*, this Court held that the attorney failed to safeguard client funds by authorizing the use of attorney trust funds for personal, familial, and other financial expenses. 470 Md. at 736, 236 A.3d at 626. The attorney also violated MARPC 19-301.15 by depositing client funds into an operating account, instead of an attorney trust account.

Like the attorney in *Frank*, Respondent on multiple occasions withdrew client funds from the attorney trust account to cover monthly credit card expenses. Also similar to *Frank*, Respondent deposited client funds into an operating account. Respondent admitted to Bar Counsel that he "inappropriately used the [attorney] trust account like a corporate account." Oral Argument at 27:13, *Attorney Grievance Comm'n v. O'Neill*, Misc. Docket AG No. 41, September Term, 2020 (Md. 2021), https://mdcourts.gov/coappeals/webcasts/webcastarchive#december2021 (AG No. 41

(2020 T.) ("Oral Argument"), archived at https://perma.cc/T6XB-3DPB. We conclude that Respondent violated MARPC 19-301.15.

This Court has interpreted MARPC 19-308.1 to apply whenever Petitioner seeks information from an attorney on any matter. *Attorney Grievance Comm'n v. Oswinkle*, 364 Md. 182, 189, 772 A.2d 267, 271 (2001) ("An attorney's obligation to respond to lawful demands of Bar Counsel applies when the attorney upon whom the demand is made is the focus of the investigation or when the investigation relates to the conduct of another attorney."). A corollary to an attorney's obligation to provide Petitioner with requested information is the obligation to furnish requested information in a *timely* and reasonable manner. *Attorney Grievance Comm'n v. Taylor*, 405 Md. 697, 718, 955 A.2d 755, 767 (2008); *Attorney Grievance Comm'n v. Sapero*, 400 Md. 461, 486, 929 A.2d 483, 498 (2007) (concluding that the attorney violated MARPC 19-308.1 by failing to timely and orderly reply to Bar Counsel even though the failure stemmed from disorganization in record keeping practices).

When an attorney responds to lawful demands for information, there is an express duty of candor and honesty. In *Attorney Grievance Commission v. Yi*, this Court found that the attorney violated MARPC 19-308.1 by knowingly misrepresenting material facts in response to Bar Counsel's request for information. 470 Md. at 497, 235 A.3d at 982. The attorney also appeared to shift blame onto clients, and the attorney's misrepresentations were "disproved by his own records." *Id.*, 235 A.3d at 982.

In the case at bar, Respondent violated the core principles of completeness, timeliness, and honesty inherent to MARPC 19-308.1. Respondent failed to provide all

27

requested information to Bar Counsel. When Respondent provided information, it was untimely, and as demonstrated by Respondent's accounting records, the information was knowingly incomplete, inaccurate, and dishonest. Respondent falsely informed Bar Counsel that the overdrafts were caused by "checks from clients that were returned unpaid." This statement was plainly false because Respondent personally caused the overdrafts on numerous occasions by withdrawing funds from the attorney trust account for personal use. Respondent failed to provide monthly accounting records from Chase Bank, which caused Petitioner to expend unnecessary time procuring the same records through a subpoena. Despite providing Bar Counsel a statement under oath in which he admitted to the mishandling and misappropriation of client funds, Respondent continued to stymie Bar Counsel's investigation by failing to provide requested information.

An attorney violates MARPC 19-308.4(a) by violation of other professional rules. *Attorney Grievance Comm'n v. Foltz*, 411 Md. 359, 395, 983 A.2d 434, 456 (2009). By violating MARPC 19-301.1, 19-301.15, 19-308.1, 19-308.4, 19-407, 19-408, and 19-410, Respondent violated 19-308.4(a).

Misappropriation of funds is "an 'act infected with deceit and dishonesty,' in violation of [MARPC] 19-308.4(c)." *Frank*, 470 Md. at 738, 236 A.3d at 627 (quoting *Attorney Grievance Comm'n v. Somerville*, 379 Md. 586, 593, 842 A.2d 811, 815 (2004)) (other citation omitted); *Attorney Grievance Comm'n v. Webster*, 402 Md. 448, 466, 937 A.2d 161 (2007) ("[W]e have consistently noted that the failure to deposit client funds into escrow accounts amounts to a violation of M[A]RPC [19-30]8.4(c) and (d).").

"Misappropriation is 'any unauthorized use by an attorney of [a] client's funds entrusted to him [or her],' whether or not temporary or for personal gain or benefit." *Attorney Grievance Comm'n v. Goodman*, 426 Md. 115, 129, 43 A.3d 988, 996 (2012) (quoting *Attorney Grievance Comm'n v. Glenn*, 341 Md. 448, 484, 671 A.2d 463, 481 (1996)) (other quotation omitted). A misappropriation also occurs when "the attorney withdraws funds from a co-mingled account for his or her own purpose and, as a result, leaves the account insufficient to cover all client funds, and such a misappropriation is never innocent." *Id.* at 130, 43 A.3d at 996 (quoting *Attorney Grievance Comm'n v. Hayes*, 367 Md. 504, 516 n.10, 789 A.2d 119, 127 n.10 (2002)) (other citation omitted). Respondent knowingly misappropriated client funds on several occasions when he withdrew client funds from the attorney trust account to pay personal expenses and left a negative balance in the attorney trust account.

We have already overruled Respondent's exception that misappropriation with respect to Mr. Varty was "impossible[,]" and agree with the hearing judge's conclusion that the misappropriation of Mr. Varty's funds violated MARPC 19-308.4(c). The hearing judge found that Respondent deposited Mr. Varty's payments into his personal account on six different occasions totaling $3,325. When Respondent allegedly attempted to transfer these funds to his attorney trust account, five of Respondent's personal checks were dishonored.

The misappropriation of funds also violated MARPC 19-308.4(d). In *Attorney Grievance Commission v. Brady*, we stated that "conduct prejudicial to the administration of justice is that which reflects negatively on the legal profession and sets a bad example

29

for the public at large[,]" 422 Md. 441, 460, 30 A.3d 902, 913 (2011) (internal citations and quotation marks omitted). Similarly, in *Attorney Grievance Commission v. Mungin*, we concluded that "[a] lawyer's mishandling of his or her attorney trust account can [] constitute conduct that is prejudicial to the administration of justice." 439 Md. 290, 315, 96 A.3d 122, 136 (2014).

Respondent mishandled his attorney trust account by failing to deposit client funds in the attorney trust account until earned and by withdrawing client funds for personal use. Such misconduct was prejudicial to the administration of justice and violated MARPC 19-308.4(d). Assuming *arguendo* that this Court considered the affidavit of Mr. Varty purporting to give consent to directly deposit funds into Respondent's personal bank account,[17] it does not excuse subsequent misappropriation of Mr. Varty's funds, let alone the multiple misappropriations of other unnamed clients' funds. We conclude Respondent violated MARPC 19-308.4.

Respondent's improper accounting also violated MARPC 19-407 and 19-408. In *Attorney Grievance Commission v. Dailey*, 474 Md. 679, 713, 255 A.3d 1068, 1087 (2021), this Court explained that the failure to produce trust account records indicating the regular receipt and monthly reconciliation of attorney trust account records constitutes a violation of MARPC 19-407. Similar to *Dailey*, Respondent failed to provide a record of a monthly reconciliation of attorney trust account records, and the information Respondent did

---

[17] The hearing judge found no evidence to support Respondent's contention that he secured Mr. Varty's permission to deposit funds in a personal account in advance of the deposit. Respondent's belated submission of an affidavit from Mr. Varty does not render the hearing judge's finding clearly erroneous.

30

provide contained numerous "errors" and discrepancies. Accordingly, we agree with the hearing judge that Respondent violated MARPC 19-407.

MARPC 19-408 forbids an attorney from commingling client and personal funds by an attorney in her or his attorney trust account. In *Webster*, we noted that "when an account is designated an attorney trust account, . . . [u]se of the trust account for personal purposes while still designated a trust account, even if it was no longer intended that the account be used for trust purposes, is prohibited." 348 Md. at 677, 705 A.2d at 1142. In the instant case, the hearing judge found that Respondent plainly violated the prohibition against commingling client funds by "routinely deposit[ing] [] personal funds into his trust account."

Respondent also initiated several different prohibited transactions in violation of MARPC 19-410. MARPC 19-410(a) generally prohibits attorneys from using funds for any unauthorized purpose. Respondent's misappropriation of Mr. Varty's funds and the funds of other unnamed clients violated MARPC 19-410(a).

MARPC 19-410(c) requires an attorney to maintain a positive balance in her or his attorney trust account. In *Frank*, we explained that if "disbursement of funds would create a negative balance in the attorney's trust account, the attorney shall not disburse the funds." 470 Md. at 740, 236 A.3d at 628. Respondent disbursed funds from the attorney trust account creating a negative balance on at least ten separate occasions. We conclude Respondent violated MARPC 19-410.

31

## SANCTION

"In determining an appropriate sanction, 'we are motivated by our obligation to protect members of the public from attorneys who have demonstrated that they are unfit for the practice of law.'" *Id.* at 741, 236 A.3d at 629 (quoting *Attorney Grievance Comm'n v. Kaufman*, 466 Md. 404, 428, 220 A.3d 316, 330 (2019)); *see also Attorney Grievance Comm'n v. Zuckerman*, 386 Md. 341, 375, 872 A.2d 693, 713 (2005) (noting that a sanction seeks to "protect the public, to deter other lawyers from engaging in violations of the Maryland Rules of Professional Conduct, and to maintain the integrity of the legal profession") (citation omitted). "[T]he appropriate sanction for [] violation[s] of the [MARPC] depends on the facts and circumstances of each case, including consideration of any mitigating factors [and aggravating factors]." *Zuckerman*, 386 Md. at 375, 872 A.2d at 713 (citations omitted). "[W]e impose a sanction that is commensurate with the nature and gravity of the violations and the intent with which they were committed." *Id.*, 872 A.2d at 713 (internal citations and quotation marks omitted).

Petitioner recommends disbarment. According to Petitioner, Respondent's conduct is similar to the attorney who was disbarred in *Attorney Grievance Commission v. Moody*. In *Moody*, Bar Counsel received notification of an attorney trust account overdraft. 457 Md. at 93, 175 A.3d at 813. During the ensuing investigation, the attorney failed to provide trust account records as requested by Bar Counsel and provided a fraudulent check register. *Id.* at 95, 175 A.3d at 814. This Court found that the attorney failed to maintain an accurate accounting of client funds, and his conduct "illustrated a pattern of negligent and deceitful

accounting practices, laden with gross inconsistencies between [the attorney's] [c]heck [r]egister, copies of checks, client ledgers, and bank records." *Id.* at 111, 175 A.3d at 823.

Respondent did not submit a recommendation for sanction in his pleading. During oral argument, and in response to a question from the Court, Respondent recommended a reprimand because "no clients were harmed . . . and where I have [] remedied that behavior . . . where client funds are to be received, [I] clearly segregate those and treat them in accordance with the law." Oral Argument at 29:30.

We agree with Petitioner that the nature and circumstances of Respondent's conduct closely resembles that of other attorneys who have been disbarred for the intentional misappropriation of client funds. Similar to the attorney in *Moody*, Respondent exercised improper and deceitful accounting practices. Respondent failed to maintain accurate records of client funds and routinely misappropriated funds for personal use. The statement by Respondent during oral argument that no clients were harmed by improper accounting practices misapprehends the scope and purpose of the MARPC. This Court has explained that "misappropriation is a most egregious violation even without actual loss, because the failure to keep client funds separate subjects the funds to the claims of creditors of the lawyer. The rule is concerned with the risk of loss, not only the actual loss." *Attorney Grievance Comm'n v. Zdravkovich*, 381 Md. 680, 704, 852 A.2d 82, 96 (2004).

This Court has imposed a lesser sanction for attorneys who improperly maintained client funds in the past, but these cases featured less deliberate misconduct and the presence of some mitigating factors. In *Attorney Grievance Commission v. McLaughlin*, 409 Md. 304, 974 A.2d 315 (2009), this Court indefinitely suspended an attorney who

33

misappropriated client funds, overdrew funds on his attorney trust account, used client funds to cure the overdraft issues, paid personal expenses with funds from his attorney trust account, commingled personal funds with client funds in his attorney trust account, and issued checks from his attorney trust account payable to cash. *Id.* at 328, 974 A.2d at 329. This Court indefinitely suspended, rather than disbarred, the attorney because the attorney acted negligently, and this Court found several mitigating and no aggravating factors. *Id.* at 329, 974 A.2d at 329.

Unlike the attorney in *McLaughlin*, who acted negligently, Respondent intentionally misappropriated and commingled funds. Respondent also intentionally and falsely stated to Bar Counsel that overdrafts were caused by dishonored client checks. Acts of dishonesty ordinarily result in disbarment absent compelling extenuating circumstances. *Attorney Grievance Comm'n v. Zimmerman*, 428 Md. 119, 144, 50 A.3d 1205, 1219 (2012) (quoting *Attorney Grievance Comm'n v. Vanderlinde,* 364 Md. 376, [406, 410,] 773 A.2d 463, [480, 483] (2001)). The hearing judge found no mitigating circumstances, and based on Respondent's lack of participation in the proceedings, we do not independently find any mitigating factors.

The presence of six aggravating factors and no mitigating factors further distinguishes the severity of sanction warranted in the instant case from that imposed in *McLaughlin*. Respondent did not except to the finding of six aggravating factors by the hearing judge, and we find the Petitioner satisfied its burden of establishing the aggravating factors by clear and convincing evidence. Respondent demonstrated a dishonest and selfish motive by using client funds from the attorney trust account to cover personal expenses.

34

The repeated incidents of misappropriation and improper accounting practices constituted multiple violations and a pattern of misconduct. Respondent failed to cooperate with Bar Counsel or admit wrongdoing. Respondent failed to safeguard client funds and to communicate honestly and responsively with Bar Counsel despite over four decades of legal experience.

On admission to the Maryland bar, a lawyer must swear an oath to demean oneself "fairly and honorably as an attorney and practitioner at law[.]" Md. Code Ann., Business Occupations & Professions § 10-212. The oath is a solemn commitment to the "virtues of character, honesty, and integrity[,]" which we have described as "the cornerstone of our legal profession." *Attorney Grievance Comm'n v. Vasiliades*, 475 Md. 520, 564, 257 A.3d 1061, 1086 (2021). The oath represents the culmination of years of study and preparation, and it initiates an attorney as "an officer of the legal system" entrusted with the "special responsibility for the quality of justice." MARPC 19-300.1 pmbl. [1]. To abide by the oath is to know and uphold the rules of professional responsibility at all times and across all jurisdictions. *See* MARPC 19-300.1 pmbl. [3].

By violating several rules of professional responsibility, Respondent did not fairly and honorably discharge the ethical duties, embodied in the oath, and required by all members of the Maryland bar. In the aggregate, Respondent's conduct warrants the ultimate sanction of disbarment.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 19-709 (d), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST LAWRENCE DANIEL O'NEILL.**

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/coa/41a20agcn.pdf